[No. 7345.   *En Banc.*   August 26, 1909.]

# W. S. McCREA et al., Respondents, v. WALTER OGDEN et al., Appellants.[1]

FRAUDS, STATUTE OF—SALE OF REAL ESTATE—MEMORANDUM—SUF-
FICIENCY—CONTRACT FOR COMMISSIONS—BROKERS. The words "Com-
mission to be paid when 2d payment is made to M. & M., $625," after
the signature of a vendor at the foot of a contract to purchase real
estate, is not a sufficient memorandum of the agreement, within
Laws 1905, p. 110, providing that an agreement for a broker's com-
mission on the sale of real estate shall be void unless the contract
or some note or memorandum thereof shall be in writing, and signed
by the party to be charged therewith, or some person thereunto by
him lawfully authorized (overruling, on rehearing, *Id.*, 50 Wash.
495).

Appeal from a judgment of the superior court for Spo-
kane county, Poindexter, J., entered March 25, 1908, in
favor of the plaintiffs, upon overruling a demurrer to the
complaint, in an action on contract. Reversed.

*Post, Avery & Higgins*, for appellants.

*Danson & Williams*, for respondents.

## ON REHEARING.

CHADWICK, J.—The statute of frauds, governing contracts
for commissions for buying or selling real estate, is as follows:

"In the following cases, specified in this section, any agree-
ment, contract and promise shall be void, unless such agree-
ment, contract or promise, or some note or memorandum
thereof, be in writing, and signed by the party to be charged
therewith, or by some person thereunto by him lawfully au-
thorized, that is to say:  .   .   .   (5) An agreement author-
izing ,an employee, an agent or broker, to sell or purchase
real estate for compensation or a commission."

In the former opinion (50 Wash. 495, 97 Pac. 503), after
quoting the memorandum relied on, "Commission to be paid

[1] Reported in 103 Pac. 788.

when 2d payment is made to McCrea & Merryweather $625,"
and a part of the second amended complaint, in which the
completion of the sale is alleged, and that it was brought
about by the efforts of respondents, it is said:

"Appellants contend that the transaction is within the stat-
ute of frauds governing contracts to pay for services for
buying or selling real estate, as set forth in the Laws of
1905, page 110; that the words at the end of the contract
do not constitute a compliance with the statute mentioned.
We think they do constitute a substantial compliance. These
words show the fact that a commission was to be paid, when
it was to be paid, to whom it was to be paid, and the amount
that was to be paid. But it is urged by appellants that it
does not state who was to pay this commission. With the
contract before him, we cannot see how it would not be clear
to any one that the intention was that the signers of the con-
tract, the vendors, should pay this commission. It is true
that a purchaser sometimes pays a commission, but this is the
exception and not the rule. When we speak about a real
estate sale and a commission being paid, we ordinarily under-
stand, unless there is specific mention to the contrary, that it
is the vendor who pays the commission. This contract was
signed by the vendors only, and we think there could be no
possible mistake or misunderstanding as to who was to pay
the commission that is provided for in this memorandum."

It is also said: "The statute in question does not require the
agreement to be in writing."

Upon rehearing, a majority of the court are unable to
concur in these conclusions. To sustain them the court must
assume, as it seems to have assumed in the original opinion,
that because, as it is said, the seller most frequently pays the
commission, the unsigned memorandum binds the appellants
to pay the commission in this case. The court seems to have
unwittingly supplied the requirement of the statute by quot-
ing and relying upon a part of the complaint. Whether the
seller most frequently pays the commission in a real estate
transaction may or may not be so. But, whatever the fact
may be, it is something with which the court can have nothing
whatever to do. It is enough for us to know that either the

purchaser or seller may contract to pay the commission, and
we cannot look beyond the contract itself to fix the liability,
for the law has said that the contract must be in writing. We
cannot assume that some one is liable and, in the absence of
a recital to the contrary, presume that the seller is to be
bound. The statute quoted requires certainty, to the end
that frauds and impositions may be prevented, and its appli-
cation cannot be arrested because in a given case—as for
instance in this one—the broker has probably rendered an
honest service for which he should in good conscience be paid.

There is nothing in the contract to show who respondents'
principals were. The contract is in an ordinary form. The
Ogdens agreed to sell and Conroy agreed to buy and, al-
though "signed by the vendors only," the principal contract
was "made" by both parties; and if we are to presume any-
thing in the teeth of the statute of frauds, it would seem that
the court should have assumed that the contract was mutually
beneficial and bound both parties to pay the commission. But
the purpose of the law was to remove all doubt, and in doing
so no injustice was done the broker, for it is always within
his power to make the contract or memorandum certain in
every particular, including the party to be bound, which, not-
withstanding the expression in the former opinion to the con-
trary, we regard as the first essential of the law; which ele-
ment, if proven in this case, would necessitate a resort to
parol testimony. In *Forland v. Boyum*, 53 Wash. 421,
102 Pac. 34, following *Foote v. Robbins*, 50 Wash. 277, 97
Pac. 103, and *Keith v. Smith*, 46 Wash. 131, 89 Pac. 473, in
construing this same statute, we held that the terms of the
contract must appear from the writing itself, and that parol
testimony could not be received to ascertain the amount
agreed on as a commission. In *Mead v. White*, 53 Wash.
638, 102 Pac. 753, the court said, in construing a contract
involving the principles here presented:

"In order to hold the respondents to any liability, the
court would be required to create a contract, either by con-

.struction or by parol evidence. There is no language in the contract to warrant the former, and the latter is within the prohibition of the statute."

It would seem to follow as an inevitable conclusion that parol testimony should not be received for the purpose of identifying the party to be charged, when the statute has said that his promise to pay shall be in writing and signed by him.

A majority of the court believing that this case falls within the rule of the cases just cited, the former opinion is over-ruled, and the case remanded with instructions to the lower court to sustain the demurrer to the second amended complaint.

RUDKIN, C. J., FULLERTON, GOSE, CROW, and PARKER, JJ., concur.