[No. 9992. Department One. February 20, 1912.]

GOLDIE-KLENERT DISTRIBUTING COMPANY, *Appellant*, v.
WILLIAM J. BOTHWELL, *Respondent*.[1]

FRAUDS, STATUTE OF—ANSWERING FOR DEBT OF ANOTHER—INTEREST
AS STOCKHOLDER. A promise by a promoter and principal stockholder
in a corporation, that if a creditor would forego its demand for im-
mediate payment for goods sold to the corporation and would con-
tinue to sell and deliver goods to it, he would pay the same and
become responsible therefor and would "indemnify and hold harm-
less" the seller for any loss on account of the extension of credit
or sale of goods to it, is a promise to answer for the debt or default
of another, within the statute of frauds, Rem. & Bal. Code, § 5289,
and void when not in writing; and it is immaterial that he is
directly interested as a stockholder.

SAME—CONSTRUCTION—QUESTION FOR COURT. In such a case, the
facts being admitted, the construction is one of law for the court.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered September 30, 1911, upon sus-
taining a demurrer to the complaint, dismissing an action
on contract. Affirmed.

*Wm. Parmerlee*, for appellant.

*W. C. Edwards*, for respondent.

Gose, J.—This is an appeal from a judgment of dismissal,
entered after demurrer to the complaint had been sustained
and after the plaintiff had refused to plead further. The
complaint is of too great length to be set forth in full. In
substance and effect, it alleges, that the appellant and the
Luneta Cafe are corporations; that the respondent is a
stockholder in the latter corporation; that he subscribed for
its capital stock in an amount "in excess of $20,000, which
was not paid;" that he was the promoter and originator of
the enterprise and the only person who has put any money
into the corporation, and that "the same was virtually his
own business;" that in November, 1910, the cafe, acting

[1]Reported in 121 Pac. 60.

through its officers, purchased from the appellant goods, wares, and merchandise of the value of $1,800, promising to pay cash therefor upon the delivery of the goods; that the appellant delivered the goods to it at its place of business in Seattle and demanded payment; that it was "unable" to pay; that the respondent then told the appellant that he was "virtually" the only person who had advanced any money to the cafe, and was the only responsible person connected with it; that it was "virtually" his business, but that owing to the fact that he was "comptroller" of the city and that the business of the cafe was that of selling intoxicating liquors and providing amusement and entertainment for its patrons, he did not, "for political reasons," desire to disclose his connection with it; that if the appellant would "forego its demand for cash with the goods then sold to it, and let the account run for a short time together with such other goods as said Luneta Cafe might order from plaintiff from time to time, that he, the said William J. Bothwell, it being his own enterprise and business, and he receiving the benefit thereof, would himself pay said debt of $1,800, and such other subsequent accounts that might accrue from time to time. That owing to his holding public office he did not desire the goods charged to him, but the goods so sold by plaintiff to the Luneta Cafe and to be sold to the Luneta Cafe thereafter should be charged solely to the account of the said Luneta Cafe, and that he, the said Bothwell, would pay the same and become responsible therefor, and that he, the said Bothwell, would indemnify and hold harmless the said plaintiff from any loss on account of its extension of credit for goods sold and to be sold as aforesaid to the said Luneta Cafe, which said goods were to be charged on said plaintiff's books to said Cafe." It is further alleged that the appellant, relying upon "said promises and assurances and said indemnity," permitted the goods theretofore sold to the cafe to remain in its possession, and that subsequently for like reasons it sold

goods, wares, and merchandise to the cafe, amounting in all to $2,628.40, and that the respondent has refused payment.

The single question presented by the appeal is, does the alleged promise of respondent fall within the statute of frauds. The code, Rem. & Bal., § 5289, provides, so far as pertinent to this question, that "every special promise to answer for the debt, default, or misdoing of another person," shall be void unless the contract or promise is in writing. Viewing the complaint as an entirety, without selecting particular words or phrases and giving them undue weight, prominence, or emphasis, we are of the opinion that the alleged promise offends the statute. The most favorable view that can be taken of the complaint is that the respondent represented that he was the largest stockholder in the corporation and the only one who had put money into it; that he was solicitous for its welfare and success; that for political reasons he desired to conceal his connection with it; that he was not one of its officers; that the first sale was made to it "through its officers;" that if the appellant would forego its demand for immediate payment of the first sale and delivery of goods, and would continue to sell and deliver goods to it, he would "pay," "become responsible for," and "indemnify and hold harmless" the appellant "from any loss on account of its extension of credit for goods sold and to be sold . . . to the said Luneta Cafe."

The true import and meaning of the complaint as an entirety, when stripped of its verbiage and simplified, is that the respondent induced the appellant to forego its demand upon the cafe for immediate payment of the first account and to extend it further credit upon his promise to indemnify it against loss. This is clearly a promise to answer for the debt of another. If I say to a coal dealer, "Deliver a load of coal to my neighbor A and I will pay for it," the debt is mine and the promise is not within the statute; but if I say to him, deliver the coal and "I will pay for it if he does not,"

or "I will guarantee the payment," or that I will "indemnify him against loss," or use equivalent words, the debt upon a delivery of the goods is not my debt; the promise is not direct, but collateral, and the contract or promise must be in writing. The courts are practically a unit upon the hypotheses stated. To state the matter in another form, a direct promise to pay for goods to be delivered to another upon the credit of the promisor is not within the statute, while a collateral promise is. *Burns v. Bradford-Kennedy Lum. Co.*, 61 Wash. 276, 112 Pac. 359; *Lusk v. Throop*, 189 Ill. 127, 59 N. E. 529; *Wilkie v. Marshall*, 77 N. J. L. 272, 72 Atl. 30; *Miller v. Adams*, 142 Iowa 515, 119 N. W. 593.

Nor does the fact that the respondent was a stockholder in the corporation change the rule. The corporation is in law a separate and distinct entity. 10 Cyc. 650. But counsel says: "Whether the promise is original or collateral is generally a question for the jury under proper instructions of the court." This statement of the law would be correct if the one party asserted facts showing a direct promise to pay for goods to be delivered to another upon the credit of the promisor, and the latter asserted the fact to be that the sale had been made upon the credit of the party receiving the goods and that he had only promised to pay upon the default of the purchaser. The rule has no broader application. When the facts are admitted, the construction is one of law for the court.

If it be a fact that the respondent promised to pay the $1,800 item if the appellant would leave the goods with the cafe and extend the time of payment of that account, and further promised to pay for such goods as the appellant might thereafter deliver to the cafe, and that it did extend the time of payment and made future deliveries to the cafe upon the credit of the respondent, the facts should have been pleaded in a plain and concise way. The circuitous method

adopted by the pleader indicates an effort to avoid a direct averment of these facts rather than to plead them.

The judgment is affirmed.

DUNBAR, C. J., CHADWICK, PARKER, and CROW, JJ., concur.