[No. 12256.   Department Two.   May 14, 1915.]

FIRST NATIONAL BANK, *Respondent*, v. GESKE & COMPANY, *Appellant*.[1]

FRAUDS, STATUTE OF—PLEADING AS DEFENSE—WAIVER. Where the statute of frauds was not pleaded as a defense nor raised in any other manner on the trial, it was waived, when the complaint fully disclosed the basis of plaintiff's claim.

FRAUDS, STATUTE OF—DELIVERY OF GOODS. Where one lumber company, not having on hand the class of lumber desired by a customer, ordered same from another company and the latter billed the lumber to the first company, but delivered it to the customer, the transaction is equivalent to a delivery to the company ordering the lumber, and hence not within the statute of frauds requiring a signed memorandum of sales of goods except where no delivery is made.

SALES—PARTIES. Where a lumber company ordered a bill of lumber from another company to supply the former's customer, and the lumber was delivered direct to the customer on the customer's assurance that he would "stand good for it," but the bill was made out to the purchasing company, and the customer was, by the seller, merely requested "to protect" it, the transaction shows that the seller regarded the first company as the purchaser and primarily liable for the debt.

FRAUDS, STATUTE OF—PROMISE TO PAY DEBT OF ANOTHER. The verbal promise of a purchaser of lumber from the F. Company, made to the J. Company which was supplying the lumber to the F. Company so as to enable the F. Company to fill the order, to the effect that the purchaser would see that it "got its money," or would "stand good for it," is a promise to answer for the debt of another, and void under the statute of frauds, if not in writing.

ASSIGNMENTS—ACTION—DEFENSES—PAYMENT TO ANOTHER. In an assignee's action for the price of lumber sold by the assignor to defendant, it is no defense that defendant had orally promised to protect a third party who had supplied the lumber to plaintiff's assignor, and had paid such third party therefor, where such promise was void under the statute of frauds, and such payment was made after notice of the assignment.

Appeal from a judgment of the superior court for King county, Smith, J., entered June 5, 1914, upon findings in

[1]Reported in 148 Pac. 593.

favor of the plaintiff, in an action upon an assigned account, tried to the court. Affirmed.

*William Wray*, for appellant.

*James Kiefer*, for respondent.

ELLIS, J.—This is an action by the assignee of a bill for a sale of lumber against the purchaser for the purchase price. Prior to July 26, 1914, the Farrell Lumber Company, a co-partnership, had a contract with the defendant, G. Geske & Company, a corporation, to furnish lumber for the construction of a bridge. On that day a car load of lumber was needed which the Farrell Lumber Company could not furnish at once. It therefore ordered the lumber from the Taylor Mill Company, a corporation, at the purchase price of $231.30, directing that it be delivered to the defendant. To hasten the matter, one Snyder, president of the defendant, on the same day called upon the Taylor Mill Company and urged the necessity of getting the lumber out promptly. The representatives of the Taylor Mill Company demurred, asking assurance of payment. Snyder replied, in effect, "I will see that you get your money," or "I will stand good for it." It is undisputed that at this time Snyder asked that the lumber be billed to the Farrell Lumber Company because he was buying it from them and wanted the account kept entire, saying, "When I am buying lumber from them (Farrell Lumber Company) I want it all kept together. You send one bill to them and one to me and I will see that you get your money." The salesman and billing clerk of the Taylor Mill Company so testified, and Snyder testified to the same effect and in almost the same terms. The evidence is also undisputed that the Farrell Lumber Company knew nothing of this conversation.

It seems clear that the Taylor Mill Company, at the time it took the order from the Farrell Lumber Company, took it without demurrer and intended to fill it for the Farrell Lumber Company, and actually did so at once, and a little later

actually billed it to the Farrell Lumber Company, without demurrer and without notice that it claimed to be selling the lumber to Geske & Company direct. The bill or invoice was dated August 4, 1913, and reads: "Sold to Farrell Mill Company for Geske & Co., Renton." Then follows the car number and an itemized description of the lumber with the aggregate selling price, $231.30. It is unquestioned that the Farrell Lumber Company immediately assigned this account to the plaintiff and received thereon ninety per cent of its face at the time of the assignment. There is no evidence whatever that the plaintiff ever had any knowledge or notice that the Taylor Mill Company claimed that the sale was made to Geske & Company.

There is evidence that, at the time of this sale, the Taylor Mill Company was indebted to the Farrell Lumber Company in a sum equal to or a little more than the amount of this order, and the Farrell Lumber Company credited the Taylor Mill Company with the amount of this order on that account. There is evidence also of subsequent transactions which would have changed this balance, but we regard this as immaterial on the real issue as to whether the transaction here in question is to be regarded as a sale to the Farrell Lumber Company or to Geske & Company.

The court found that the Farrell Lumber Company sold and delivered the lumber to the defendant, Geske & Company, at an agreed price of $231.30; that immediately thereafter the Farrell Lumber Company, by an assignment in writing, transferred to the plaintiff its account and claim against the defendant for the purchase price of the lumber, in consideration of an advance then made by the plaintiff to the Farrell Lumber Company, and that no part of the money due thereon has been paid. The court concluded, as a matter of law, that the plaintiff is entitled to judgment for the amount mentioned, with interest and costs. Judgment went accordingly, and the defendant has appealed.

The appellant contends that there can be no recovery in this action because the contract price for the lumber was more than fifty dollars and there was no memorandum of the sale in writing signed by the party to be charged, as required by the statute of frauds, Rem. & Bal. Code, § 5290 (P. C. 203 § 5). There is no merit in this contention. The statute of frauds was not pleaded as a defense nor raised in any other manner in the court below, though the complaint fully disclosed the basis of the respondent's claim. Moreover, the lumber was actually delivered, thus bringing the case within the exception made by the statute itself. To avoid this fact, it is argued that there was no competent evidence of the delivery. We shall not discuss the evidence, since the answer admits the delivery of the lumber to the appellant, and the evidence, as we have seen, clearly shows that it was delivered on the order of, and primarily billed to, the Farrell Lumber Company. This was equivalent to a delivery to that company and by it to the appellant.

Nor do we find any merit in the claim that this lumber was sold directly to the appellant by the Taylor Mill Company. The fact that appellant's president, after the order had been made by the Farrell Lumber Company, promised to see that the Taylor Mill Company would get its money did not make the sale a sale direct to the appellant. On the contrary, his statement at the time to the effect that, since he was buying from the Farrell Lumber Company, he wanted it all kept together and directed that a bill be sent to the Farrell Lumber Company, clearly indicates that he then regarded the sale as being made to that company. The fact that the Taylor Mill Company complied with his request and sent the bill according to his direction also shows that the Taylor Mill Company regarded the Farrell Lumber Company as the purchaser and primarily liable for the debt. At the time the duplicate bill was mailed, the Taylor Mill Company wrote Geske & Company:

"Confirming conversation with your Mr. Snyder recently we ask you to protect us to the amount of $231.30 on account lumber delivered to Renton for the Farrell Mill Co."

This letter on its face clearly shows that at that time the transaction was not regarded by the Taylor Mill Company as a sale directly to Geske & Company. A remittance was not requested, but merely "We ask you to protect us," thus clearly indicating that the Farrell Lumber Company was the one to whom credit was primarily given.

The fact that the appellant has paid this bill to the Taylor Mill Company is immaterial. Whatever its moral duty in the premises, it was under no legal obligation to do so. Under the evidence here presented, its promise was a mere verbal undertaking to answer for the debt of another. It was not in writing, and hence could not have been enforced. Rem. & Bal. Code, § 5289 (P. C. 203 § 3) ; *Pressentin v. Hawkeye Timber Co.*, 77 Wash. 388, 137 Pac. 999 ; *Goldie-Klenert Distributing Co. v. Bothwell*, 67 Wash. 264, 121 Pac. 60, Ann. Cas. 1913 D. 849.

This payment raises no equity in appellant's favor, since its president admitted that he knew the bill had been assigned to the respondent when he made the payment to the Taylor Mill Company and took from that company a bond for protection in making the payment. This evidence was clearly competent as tending to show that the appellant never regarded itself as primarily liable for the debt.

The findings of the trial court were clearly supported by the evidence. The judgment is affirmed.

MORRIS, C. J., MAIN, CROW, and FULLERTON, JJ., concur.